# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**VICTORIA SHANTE HOUSTON-THOMAS**                              **PLAINTIFF**

**v.**                                          **CIVIL CASE NO. 4:20-CV-198-DAS**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**OF THE SOCIAL SECURITY ADMINISTRATION[1]**             **DEFENDANT**

## FINAL JUDGMENT

Plaintiff Victoria Shante Houston-Thomas filed a Complaint for Judicial Review of Social Security Decision of the unfavorable decision of the Commissioner of Social Security regarding an application for supplemental security income. Docket 1. The parties have consented to entry of final judgment by the United States Magistrate Judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Docket 22. The Court, having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law and having heard oral argument, finds that the Commissioner's decision should be affirmed.

## FACTS

The plaintiff filed for benefits on February 21, 2018, alleging onset of disability commencing on August 11, 1990. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable decision on February 19, 2020. Docket 15, 26-36. The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of the Court is directed to change the docket accordingly.

The ALJ determined the claimant had the following severe impairments: seizure disorder, status-post ventriculoperitoneal shunt, migraine headache, obesity, major depressive disorder, recurrent, severe with psychotic features, and generalized anxiety disorder. The ALJ found he retained the residual functional capacity (RFC) to perform light work with the following limitations: occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid all exposure to unprotected heights or dangerous moving machinery; never operate a commercial vehicle; perform simple, routine, repetitive tasks and make simple-work related decisions; occasionally respond appropriately to co-workers and supervisors; adapt to occasional and gradually introduced changes to the work environment; and sustain concentration, persistence, or pace on tasks for two-hour period in an eight-hour workday.

While the plaintiff has no past relevant work, the ALJ found, based on the testimony of the vocational expert, that there were other jobs in the national economy that would fit within the RFC. For example, the ALJ found she can work as a marker, bagger, and small products assembler. Each of these jobs are unskilled and performed at the light level of exertion. These three jobs represent 454,100, 137,900, and 60,800 jobs respectively in the national economy.

## **ANALYSIS**

The plaintiff alleges the ALJ erred in her analysis of the medical opinions and failed to evaluate the record evidence fully and fairly. The record contains medical opinions from State Agency physician Dr. David Powers, consultative examiner Dr. Pamela Buck, and Dr. M. Faseeh Hadidi.

The ALJ found Dr. Powers' opinion that the plaintiff could perform routine, repetitive work, complete a normal workday and workweek without interference from her symptoms,

concentrate for at least two-hour periods without extended breaks, and perform simple work and possibly detailed tasks persuasive and "consistent with the [plaintiff's] presentation on mental status examination with Dr. Buck [… and] also with the remainder of the evidence of record."

Dr. Buck opined that the plaintiff "seemed unable to respond appropriately to co-workers and supervisors in a work environment;" however, the ALJ noted the plaintiff "specifically denied any difficulties getting along with supervisors or co-workers when she was working" and that she and her husband "denied a history of difficulty getting along with people while working and denied that she had ever been fired or laid off for such a problem."[2] For these reasons, the ALJ found Dr. Buck's opinion only partially persuasive.

Dr. Hadidi found the plaintiff had poor ability to work in coordination with or proximity to others without being unduly distracted, to complete a normal workday and workweek without interference from her symptoms, respond appropriately to changes in a routine work setting, to maintain personal appearance, and to behave in an emotionally stable manner. The ALJ found these limitations "not entirely consistent with the overall evidence of record," specifically citing treatment notes indicating the plaintiff's appearance was within normal limits or that she presented dressed neatly. On this basis, the ALJ found Dr. Hadidi's opinion partially persuasive, yet noted objective evidence supporting his opinion that the plaintiff has some deficits getting along with others and may have trouble adhering to a schedule.

The plaintiff takes particular issue with the ALJ's analysis of Dr. Buck's and Dr. Hadidi's medical opinions. Specifically, the plaintiff argues the ALJ erred in finding Dr. Powers' opinion persuasive and "consistent […] with the remainder of the evidence of record" because it is inconsistent with Dr. Buck's and Dr. Hadidi's opinions that the plaintiff is limited in her ability

---

[2] The ALJ cites the plaintiff's and her husband's adult function reports in which they both indicate she had never been fired or laid off from a job because of problems getting along with others.

to respond appropriately to co-workers and supervisors in a work environment. According to the plaintiff, the ALJ failed to properly evaluate the supportability of these opinions.[3] However, the court finds substantial evidence exists in the record to support the ALJ's evaluation of Dr. Powers' opinion and her ultimate determination that the plaintiff could occasionally respond appropriately to co-workers and supervisors.

As discussed herein, Dr. Buck opined that the plaintiff "seemed unable to respond appropriately to co-workers and supervisors in a work environment," yet her report indicated the plaintiff's behavior was socially appropriate and that she was attentive and responsive. Further, Dr. Buck reported that the plaintiff was alert, oriented, cooperative, and pleasant and did not exhibit any unusual mannerisms. Dr. Hadidi's checklist opinion indicated the plaintiff's ability to work in coordination with or proximity to others without being unduly distracted was "poor,"[4] but he rated her ability to accept instructions and respond appropriately to criticism from supervisors and get along with co-workers and peers as "good."

The ALJ's decision contains a thorough discussion of Dr. Powers', Dr. Buck's, and Dr. Hadidi's records evidencing the supportability of their opinions regarding the plaintiff's ability to respond appropriately to co-workers and supervisors. The ALJ explained the inconsistencies between Dr. Buck's and Dr. Hadidi's opinions and other record evidence, yet ultimately included an occasional limitation on the plaintiff's ability to respond appropriately to co-workers and supervisors in the RFC, consistent with Dr. Hadidi's opinion. Accordingly, the ALJ's decision is based on substantial evidence and the relevant legal standards were properly applied.

---

[3] The regulations provide "[t]he factors of supportability and consistency are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions […] to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions […] in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).
[4] Dr. Hadidi's assessment defines "poor" as "seriously limited, but not precluded."

As for the second alleged error, the plaintiff claims the ALJ did not properly consider her ability to maintain employment on a sustained basis in light of her mental health impairments. Citing *Leidler v. Sullivan*, the plaintiff argues that the ALJ was required to specifically determine whether she could continually maintain employment in the national economy despite her severe mental illness and contends that she was unable to do so. *See See Leidler v. Sullivan*, 885 F.2d 291, 292-93 (5th Cir. 1989) (citing *Singletary v. Bowen,* 798 F.2d 818 (5th Cir.1986)) ("the Secretary must consider whether an applicant with a serious mental illness remains able to engage in substantial gainful activity when, although he is capable of performing work, he cannot maintain regular employment. […] [T]he Secretary must determine whether the claimant can *hold* whatever job he finds for a significant period of time."). The plaintiff specifically points to Dr. Hadidi's opinion that she would have trouble adhering to a schedule and may be absent from work twice a month to support her argument that the ALJ should have made a finding as to whether she could maintain or sustain employment.

While it is true that the ALJ must determine whether a claimant is capable of not only obtaining, but also maintaining, employment, *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002), this separate finding is not required in every case. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) ("[N]othing in *Watson* [*v. Barnhart*, 288 F.3d 212 (5th Cir. 2002)] suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case."). The Fifth Circuit explained in *Frank v. Barnhart* that "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619. The Court explained,

> [u]sually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise […] where the medical impairment, and the symptoms thereof, is of such a nature that separate

> consideration of whether the claimant is capable of maintaining employment is required.

*Id.* Just as *Frank* "did not establish the factual predicate required by *Watson* to necessitate a separate finding," the plaintiff has not established the existence of mental impairments that wax and wane such that a separate finding regarding her ability to maintain employment was necessary. The ALJ found Dr. Hadidi's opinion that the plaintiff might have trouble adhering to a schedule supported by her own testimony that she needed reminders to attend appointments and go places in general. However, this alone is insufficient to require the ALJ to make a separate finding as to whether the plaintiff could maintain employment. Similarly, absent evidence of waxing and waning symptomology, Dr. Hadidi's opinion that the plaintiff may be absent from work twice a month also does not require a separate finding about her ability to maintain employment.

Accordingly, the Court finds there is no reversible error, and the Commissioner's decision is supported by substantial evidence in the record. Therefore, the decision of the Commissioner is hereby **AFFIRMED**.

**SO ORDERED**, this the 2nd day of December, 2021.

/s/ David A. Sanders  
**UNITED STATES MAGISTRATE JUDGE**